**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

-vs-                                                                   **Case No. 6:05-cv-1171-Orl-31JGG**

**REAL PROPERTY, including any
BUILDINGS, APPURTENANCES, AND
IMPROVEMENTS THEREON, located at
14148 POPCORN TREE COURT,
ORLANDO, FLORIDA;**

**CHARLES WATSON'S INTEREST IN
SUGAR CREEK CAPITAL, LLC;**

**CHARLES WATSON'S INTEREST IN
GLOBAL CAPITAL FUND ["GCF"]; and**

**CHARLES WATSON'S INTEREST IN
THE GLOBAL CAPITAL HOLDINGS
FUND ["GCH"];**

        **Defendants.**

_____

**ORDER**

This *in rem* forfeiture action came on for consideration without oral argument on the following motions:

> **MOTION:**    **GOVERNMENT'S MOTION FOR DEFAULT JUDGMENT AGAINST ANGELA-ROJAS WATSON AND CHARLES WATSON (Docket No. 19)**
>
> **FILED:**     **November 15, 2005**
> _____
>
> **DISPOSITION**: the motion is **DENIED WITHOUT PREJUDICE**.

> **MOTION:** GOVERNMENT'S REQUEST TO CLERK TO ENTER DEFAULT AS TO IN REM DEFENDANTS (Docket No. 23)
>
> **FILED:** January 5, 2006
>
> ---
>
> **DISPOSITION**: the motion is **DENIED WITHOUT PREJUDICE**.

## I. THE LAW

### A. THE FORFEITURE OF PERSONAL PROPERTY

The government may file a verified complaint for forfeiture *in rem* in the United States District Court in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims. 18 U.S.C. § 983 (a)(3)(A); Supplemental Rules A and C (1)(b) (applicable to statutory condemnation proceedings analogous to maritime actions in rem). The verified complaint must describe with reasonable particularity the property that is the subject of the action. Supplemental Rule C (2)(b). In a forfeiture proceeding for a violation of a federal statute, the verified complaint must state whether the property is within the district, and if not, the statutory basis for the court's exercise of jurisdiction over the property. Supplemental Rule C (2)(d)(ii); *see, e.g.*, 18 U.S.C. § 981 (b)(3) and 28 U.S.C. § 1355 (b).

Before the Clerk issues a warrant of arrest and/or summons, a judicial officer must review the verified complaint without notice to the parties, and determine whether probable cause exists for an action *in rem*. Local Admiralty Rule 7.03 (b)(1). If the judge finds that the conditions for an *in rem* action appear to exist, the plaintiff prepares an order for the Court's signature [MDF 703] directing

the Clerk to issue a warrant of arrest in rem [MDF 703].[1] *See* Supplemental Rule C (3)(a)(ii)(A); Local Admiralty Rule 7.03 (b)(1); *see also* Forms MDF 702 and MDF 703 in Appendix to Local Admiralty Rules. A person who asserts an interest in the property must file a verified claim in the district court identifying his interest within ten days of completion of service of the complaint, and must file and serve an answer to the complaint within twenty days after filing his claim. Supplemental Rule C (6)(a)(i); Local Admiralty Rule 7.03 (f).

## B. THE FORFEITURE OF REAL PROPERTY

Special rules apply to real property which, unlike personal property, cannot be removed from the jurisdiction. Absent exigent circumstances, the Due Process Clause requires the government to afford notice and a meaningful opportunity to be heard *before* seizing real property that is subject to civil forfeiture. *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993); *2751 Peyton Woods Trail*, 66 F.3d 1164 (11th Cir. 1995); *U.S. v. 3284 Brewster Drive*, 949 F.Supp. 832 (M.D. Fla. 1996) (devising warrant of arrest in rem pre-CAFRA). In 2000, Congress revised the civil forfeiture procedures for real property to comport with the Due Process Clause.[2] *See* 18 U.S.C. § 985. The civil forfeiture of real property may proceed only as a judicial forfeiture, and not as an administrative forfeiture. 18 U.S.C. § 985 (a). Real property is not seized before entry of an order of forfeiture, and owners and occupants are not evicted. 18 U.S.C. § 985 (b)(1).

---

[1] The government may submit the proposed order and warrant electronically with the motion.

[2] On April 11, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106-185, 114 Stat. 202, in an effort to address due process concerns associated with federal civil forfeitures. H.R.Rep. No. 106-192, at 4-5 (1999). *See* Pub.L. No. 106- 185 § 2, 114 Stat. at 202, 210 (stating that CAFRA § 2 is intended to apply to proceedings arising from "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense." CAFRA is codified principally at 18 U.S.C. § 983, and applies to this case. It was enacted by signature on April 25, 2000, and applies to "any forfeiture proceeding commenced on or after the date that is 120 days after the date of the enactment of this Act." Pub.L. No. 106-185 § 21, 114 Stat. at 225.

Rather, the government initiates a civil forfeiture action against real property by filing a complaint, posting a notice of the complaint on the property, and serving notice on the property owner, along with a copy of the complaint. 18 U.S.C. § 985 (c)(1). If the property owner cannot be served with the notice because he is a fugitive; because he resides outside the United States and cannot be served under Fed.R.Civ.P. 4; or because he cannot be located despite the exercise of due diligence, then constructive service may be made pursuant to state law. 18 U.S.C. § 985 (c)(2). If the real property has been posted in accordance with § 985 (c)(1), then it is not necessary for the Court to issue an arrest warrant *in rem*, or to take any other action to establish *in rem* jurisdiction over the real property.

### C. SERVICE OF PROCESS ON CLAIMANTS

Rule 4 of the Federal Rules of Civil Procedure governs notice to claimants of seized *in rem* property, both real property and personal property. *See* Fed. R. Civ. P. (n)(1). Notice to claimants of the property is sent in the manner provided by the federal forfeiture statute or by service of a summons under Rule 4. *Id*. When serving an individual within the United States, the government must serve the summons and complaint within 120 days after filing the complaint. Fed. R. Civ. P. 4 (c), (m).

The method of service is standard. When serving an individual in the United States, the government causes the U.S. Marshal 1.) to deliver a copy of the summons and complaint to the individual personally; 2.) to leave copies of the summons and complaint at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein; 3.) to deliver a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process; or 4.) to serve the individual pursuant to state law. Fed. R. Civ. P. 4 (e). The government serves a domestic corporation, partnership, or association by causing the

U.S. Marshal 1.) to serve the individual pursuant to state law; or 2.) to deliver a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4 (h). If service is not waived, the government then files a proof of service by the U.S. Marshal. Fed. R. Civ. P. 4 (l).

## II. APPLICATION

### A. THE VERIFIED COMPLAINT

The government commenced this forfeiture action by filing a Verified Complaint for Forfeiture *In Rem* against four *in rem* defendants: real property, including a personal residence at 14148 Popcorn Tree Court, Orlando, Florida; and Charles Watson's "interest" or "ownership" in three Florida corporations. Docket No. 1 - 1. The Verified Complaint alleges that the *in rem* properties are subject to forfeiture because they were involved in or traceable to money laundering transactions in violation of 18 U.S.C. §§ 1956 (a)(1) and 1957.[3] According to the FBI,[4] Charles Watson, a licensed stock broker, admitted that he had defrauded investors in two corporations by mailing to investors phony "audited" quarterly statements showing exaggerated returns. Docket No. 1 - 1 at 3, 5. Charles Watson

---

[3] Mail fraud in violation of 18 U.S.C. § 1341 is a predicate act for racketeering activity under 18 U.S.C. § 1961 (1), and is therefore a "specified unlawful activity" under 18 U.S.C. § 1956 (c)(7)(A) (money laundering) and 18 U.S.C. § 1957 (f)(3) (money laundering). Any real or personal property which is derived from proceeds traceable to any offense constituting "specified unlawful activity" is subject to forfeiture to the United States under 18 U.S.C. § 981 (a)(1)(C). The government therefore seeks to forfeit and condemn both real property and personal property pursuant to 18 U.S.C. § 981 (a)(1)(C) (pertaining to civil forfeiture) and 18 U.S.C. § 983 (general rules for civil forfeiture proceedings). Verified Complaint, Docket No. 1 - 1 at 1.

[4] Scott Skinner, Special Agent of the FBI, verified the complaint. Docket No. 1 - 1 at 8.

also admitted that he had deposited (laundered) the mail fraud proceeds from one corporation,[5] and had used investors' money both to purchase the residence at 14148 Popcorn Tree Court and to invest in a real estate company.

### B. DESCRIPTION OF THE PROPERTY TO BE CONDEMNED

#### 1. Personal Property

The Verified Complaint has failed to describe with reasonable particularity the personal property that is the subject of the action. *See* Supplemental Rule C (2)(b). The government provides somewhat inconsistent identities for the three *in rem* defendants that it seeks to condemn. The caption of the Verified Complaint names as *in rem* defendants Charles Watson's "interest" in Global Capital Fund; in Global Capital Holding Fund; and in Sugar Creek [two words] Capital, LLC. Docket No. 1 - 1 at 1; *accord*, Docket No. 1 - 1 at 6; *see also* Notice of Complaint, Docket No. 12 - 3 at 1. In contrast, the text of the Verified Complaint defines the *in rem* defendants as Charles Watson's "ownership" in Global Capital Fund**, LTD**; in Global Capital Holding**s, Inc**., and in **Sugarcreek** [one word] Capital, LLC. Docket No. 1 - 1 at 2 (bold emphasis supplied).

According to paragraph 3 of the Verified Complaint, Global Capital Fund, LTD, Global Capital Holdings, Inc., and Sugarcreek Capital, LLC are each Florida corporations.[6] Docket No. 1 - 1 at 2. In 2002, Charles Watson formed Global Capital Fund, LTD, and Global Capital Holdings, Inc.,

---

[5]The Verified Complaint alleges that Charles Watson used both Global Capital Fund, LTD and Global Capital Holdings, Inc. to defraud investors. The Verified Complaint also alleges that Charles Watson deposited and laundered mail fraud proceeds from Global Capital Fund, LTD. Docket No. 1 -1 at 4 and Attachment A. Nevertheless, the Verified Complaint stops short of expressly alleging facts showing that Charles Watson deposited and laundered fraud proceeds from Global Capital Holdings, Inc. so as to qualify Charles Watson's interest in that company for forfeiture.

[6]Although an individual's intangible "interest" or "ownership" in a corporation normally is represented by tangible shares of stock, the Verified Complaint does not define the *in rem* ownership interests terms of stock. Indeed, Charles Watson may have sold shares of Global Capital Fund, LTD and Global Capital Holdings, Inc. to the victimized investors. *See* Verified Complaint, Docket No. 1 -1 at 3.

as holding companies for various investments. Docket No. 1 - 1 at 2, 3. In April 2004, Charles Watson and John W. DuBrule formed Sugarcreek Capital, LLC, to purchase and improve real property in Central Florida, and "each had 50% ownership." Docket No. 1 -1 at 5, 6. On June 30, 2005, Charles Watson transferred and assigned to the United States all of his interest in "Sugarcreek Capital LLC, the Global Capital Fund (GCF); Global Capital Holdings (GCH); and Summit Capital." Verified Complaint, Docket No. 1 - 1 at 6; Attachment D, Docket No. 1 - 6 at 2, Assignment. Charles Watson's "interest" in the corporations and "ownership" in the corporations may or may not be identical, but each corporation should be properly named in describing the forfeitable interest or shares.

### 2. **Real Property**

The Verified Complaint describes the defendant as "the real property, including any buildings, appurtenances, and improvements thereon, located at 14148 Popcorn Tree Court, Orlando, Florida." Docket No. 1 - 1 at 2. According to the Verified Complaint and Orange County Property records, 14148 Popcorn Tree Court is owned by Charles N. Watson and Angela Rojas-Watson. Docket No. 1 - 1 at 5. On June 30, 2005, Charles Watson signed a quit claim deed conveying to the United States all of his right, title, and interest in 14148 Popcorn Tree Court. Verified Complaint, Docket No. 1 - 1 at 5; Attachment B, Docket No. 1 - 4 at 2, Quit Claim Deed. Angela Rojas-Watson has filed a lis pendens against the property. Docket No. 1 - 1 at 5. The government does not seek to condemn any personal property at 14148 Popcorn Tree Court.

### C. **LOCATION OF THE PROPERTY TO BE CONDEMNED**

The verified complaint must state whether the property is within the district, and if not, the statutory basis for the court's exercise of jurisdiction over the property. *See* Supplemental Rule C

(2)(d)(ii). Without doubt, the real property is in Orlando, Orange County, Florida. The location of the Charles Watson's "interest" or "ownership" in the three corporations, however, is less clear.

The Verified Complaint generally alleges that "the defendant property is located within the Middle District of Florida." Docket No. 1 - 1 at 8. Two paragraphs later, the Verified Complaint alleges that "the defendant property is within the district or will be during the pendency of this action." Docket No. 1 - 1 at 3. It is unclear whether the government alleges that Charles Watson's intangible "interest" or "ownership" — or his tangible shares of stock — in the three corporations are or will be in the Middle District of Florida. The government states no reliance on any statute such as 18 U.S.C. § 981 (b)(3) or 28 U.S.C. § 1355 (b) for the court's exercise of jurisdiction over the defendant property, whether personal or intangible.

### D. IN REM JURISDICTION OVER PROPERTY

#### 1. **Personal Property**

Even assuming that the Verified Complaint describes with reasonable particularity the personal property or intangible "interest" or "ownership" that is the subject of the action under Supplemental Rule C (2)(b), and also properly states the statutory basis for the Court's exercise of jurisdiction over the property under Supplemental Rule C (2)(d)(ii), the government has not yet brought the property within the *in rem* jurisdiction of the United States District Court for the Middle District of Florida. The record does not show that the Clerk ever issued a warrant of arrest [MDF 703] and/or summons for the personal property, much less that a judicial officer reviewed the Verified Complaint prior to issuance of the warrant or summons to determine that probable cause exists for an action *in rem*

against each defendant.⁷ No claimant is yet required to file a verified claim or answer in the district court because the government has not yet completed service of the complaint. The personal property is not in default.

### 2. **Real Property**

The Court does not have *in rem* jurisdiction over real property until the government has initiated a civil forfeiture action against the real property in the manner specified by Congress in 18 U.S.C. § 985 (c)(1). In this case, the government has filed the Verified Complaint. Docket No. 1. On October 18, 2005, a deputy U.S. Marshal went to 14148 Popcorn Tree Court, and posted a copy of the Verified Complaint (but no separate Notice of the Complaint) on the front door when he found no one at home. Docket No. 21 at 1. Nevertheless, the government has not yet accomplished the third step necessary to initiate a civil forfeiture action against the real property under 18 U.S.C. § 985 (c)(1). The government has not yet served notice and a copy of the Verified Complaint on the property owners pursuant to Rule 4. The real property at 14148 Popcorn Tree Court therefore has been "posted," but has not yet been "posted in accordance with [§ 985 (c)(1)]" as required by 18 U.S.C. §§ 985 (c)(3) and 985 (c)(1)(C).

Absent the filing of a waiver of service, service by certified mail does not suffice for adequate notice. Fed. R. Civ. P. (d)(4). On August 30, 2005, the government sent by certified mail the Verified Complaint for Forfeiture In Rem and Notice of the Complaint to Warren Lindsey. The government asserts that Lindsey is Charles Watson's attorney, but Warren Lindsey has filed no notice of

---

⁷The "wherefore" clause at the end of the Verified Complaint asks this Court to "issue warrants and summons [sic] for the arrest and seizure of the defendant personal property." Docket No. 1 - 1 at 7. The government, however, filed no motion seeking issuance of summonses or warrants of arrest *in rem*, and this Court issued no such summonses or warrants on its own motion.

appearance in this civil forfeiture action. Lindsey could not have appeared as Charles Watson's attorney in a related criminal action, because there is no such action pending. *See* Docket No. 2 . The government also mailed the Verified Complaint for Forfeiture In Rem and Notice of the Complaint by certified mail to co-owner Angela Rojas-Watson at 4148 [sic — wrong address] Popcorn Tree Court on September 19, 2005. *See* Declaration in Support of Request to Enter Default as to Charles Watson and Angela Rojas-Watson, Docket No. 12 - 2 at 1; Docket No. 12 - 3 at 1; Docket No. 12 - 4 at 1.

The government makes no allegation that the Watsons cannot be served with the notice under Rule 4 because they are fugitives, or because they reside outside the United States. The government does not allege that the Watsons cannot be located despite the exercise of due diligence so as to permit constructive service pursuant to state law. Moreover, the government has never sought leave to use alternative service by publication. Neither owner has been served by the method prescribed by Rule 4 (e). The real property and the owners as claimants are not in default.

## V. CONCLUSION

Although the government has never properly served Charles Watson and Angela Rojas-Watson pursuant to Fed. R. Civ. P. 4 (e), the Clerk entered default against them on November 3, 2005. Docket No. 13. The government's motion for default judgment [Docket No. 19] against Charles Watson and Angela Rojas-Watson is **DENIED without prejudice**. Similarly, the government's request to the Clerk to enter default as to *in rem* defendants [Docket No. 23] is **DENIED without prejudice**. It is

**FURTHER ORDERED** that the government shall file an Amended Verified Complaint on or before February 17, 2006, that describes with reasonable particularity the personal property or

intangible "interest" or "ownership" that is the subject of the action under Supplemental Rule C (2)(b), that states the statutory basis for the Court's exercise of jurisdiction over such property under Supplemental Rule C (2)(d)(ii), and that shows that each *in rem* defendant was involved in or traceable to money laundering transactions. *See* n.5, *supra*.

**ORDERED** in Orlando, Florida this 23rd day of January, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Gregory A. Presnell
AUSA Daniel W. Eckhart